# Ballard Spahr LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Jacquelyn Schell
Tel: 646.446.8048
Fax: 212.223.1942
SchellJ@ballardspahr.com

October 13, 2025

*By Electronic Filing*

U.S. District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *In re Meta Materials, Inc.*, Motion to Quash Non-Party Subpoena in Underlying Bankruptcy Case No. 3:24-50792-hlb (U.S. Bankruptcy Court for the District of Nevada)

Your Honor:

We represent The Nasdaq Stock Market LLC ("Nasdaq"), a non-party on which Christina Lovato, in her capacity as the Chapter 7 Trustee (the "Trustee") for Meta Materials, Inc. (the "Debtor"), served two subpoenas in the above-referenced bankruptcy proceeding (the "Subpoenas"). *See* Exs. A, B. We write, pursuant to Fed. R. Civ. P. 45 and Local Civil Rule 37.2, to request a pre-motion conference in advance of Nasdaq's proposed motion to quash the Subpoenas. The Subpoenas are improper for two reasons: (i) because there is no "action" pending, their scope and purpose are impermissible under the bankruptcy laws, and (ii) even if the Subpoenas were legally permissible, compliance would impose an undue burden on Nasdaq.

**I.    Background**

On August 9, 2024, the Debtor commenced a voluntary chapter 7 bankruptcy proceeding, and the Trustee was appointed to administer the Debtor's bankruptcy estate. *See In re Meta Materials, Inc.*, No. 3:24-50792-hlb (Bank. D. Nev.) (hereafter, "*In re Meta Materials*"), ECF Nos. 1, 3. The Trustee engaged four law firms as "special counsel" ("Special Counsel") to "investigate" potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices, such as naked short selling and spoofing. *Id.*, ECF Nos. 98, 105, 1956. Special Counsel conducted a "preliminary investigation" before the bankruptcy commenced that purportedly uncovered a fraudulent scheme involving "persistent and extensive spoofing" through "millions of 'Baiting Orders.'" *Id.*, ECF No. 98 at 2, 98-1 at 2. Special Counsel's pre-petition investigation was purportedly comprehensive, allegedly identifying "over 55 million shares of [Meta Materials] MMAT and 92 million shares of [Torchlight Energy Resources] TRCH that were impacted by this fraudulent activity and trading practices constituting the alleged market manipulation over several years." *Id.*, ECF No. 98-1 at 2. The Trustee has obtained approximately $11.8 million in litigation funding commitments. *Id.*, ECF No. 98-2 at 3-4.

The Trustee, having already conducted its "investigation," is now preparing for litigation against already-identified defendants. *Id.*, ECF No. 98-1 (summary of "potential litigation" against certain "potential defendants" or "targets"). The Trustee has launched a discovery campaign against certain financial institutions and regulators, including Nasdaq.

On March 6, 2025, the Trustee filed an *ex parte* motion for an order pursuant to Bankruptcy Rule 2004 requiring Nasdaq to appear for examination and produce documents. The Trustee sought an examination related to the Debtor's "assets, liabilities, and financial affairs" and how potential share price manipulation "affected Debtor's financial condition for possible recovery on behalf of Debtor's estate." *Id.*, ECF No. 1622. The Court granted the *ex parte* motion, but it limited the requested discovery to examination only. *Id.*, ECF No. 1644.

Nonetheless, on April 15, 2025, the Trustee served the Subpoenas on Nasdaq: (1) a subpoena commanding production of documents only in a bankruptcy case (the "CR45 Subpoena"), *see* Ex. A, and (2) a subpoena for Rule 2004 examination commanding testimony at an oral examination and production of documents (the "BR2004 Subpoena"), *see* Ex. B. The Subpoenas included one identical document production request (the "Request"). On April 17, 2025, Nasdaq timely objected to the Subpoenas. *See* Ex. C (Nasdaq's Objection Letter). On May 21, 2025, the bankruptcy court entered a stipulated protective order between Nasdaq and the Trustee. *Id.*, ECF No. 1955. The Trustee subsequently revised the Request, while the parties continued to reserve all rights and objections. *See* Ex. D (Trustee's amended Request).

On July 3, 2025, Nasdaq produced responsive documents for the period June 15, 2021 to December 15, 2021, which the Special Counsel had identified as the most important period. Special Counsel agreed to review the production in good faith to see whether it fully satisfied its needs under the Subpoenas, while Nasdaq reserved all rights and defenses to the Subpoenas. *See* Ex. E (Nasdaq's initial production letter). Following Nasdaq's initial production, however, the Special Counsel continued to demand compliance with the full Request, and the parties reached an impasse. In response to third-party motions to quash similar subpoenas, however, the Trustee has highlighted Nasdaq's production as an example of compliance. Counsel for Nasdaq further met and conferred on October 7, 2025, but were unable to resolve Nasdaq's objections and, following further consultation with clients, reached an impasse.

## II.   Argument

Nasdaq respectfully moves the Court to enter a protective order quashing the Subpoenas. This Court has jurisdiction over the enforcement of the Subpoenas because the Southern District of New York is "the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). As explained below, this Court must quash the Subpoenas because they violate the Federal Rules of Civil Procedure ("Civil Rules") and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

### a.   The Request violates Civil Rule 45's pending "action" requirement.

The Request is included in both Subpoenas pursuant to Civil Rule 45, as adopted by Bankruptcy Rule 9016, not pursuant to Bankruptcy Rule 2004. Under Civil Rule 45, Nasdaq should not be required to comply with the Request under either of the Subpoenas because there is no "action" pending in the Debtor's bankruptcy case. Bankruptcy Rule 9016 provides that Civil Rule 45 "applies in a bankruptcy case." Civil Rule 45 generally authorizes a "party" to issue a subpoena commanding attendance at a deposition and/or production of documents. Civil Rule 45(a)(2) requires that every subpoena must "issue from the court where the action is pending." Therefore, there must be an "action" pending for a subpoena to be issued. Bankruptcy Rule 9002 provides that certain words used in the Civil Rules have specific meanings when a Civil Rule is made applicable by the Bankruptcy Rules, unless that meaning "is inconsistent with the context." Fed. R. Bankr. P. 9002. Bankruptcy Rule 9002(1) defines the word "action" to mean "an adversary proceeding or, when appropriate: a contested petition; a proceeding to vacate an order for relief; or a proceeding to determine any other contested matter." Thus, in a bankruptcy case, a subpoena

must issue from the court where the "adversary proceeding," "contested petition," "proceeding to vacate an order for relief," or "proceeding to determine any other contested matter," is pending. *In re Patel*, 16-65074-LRC, 2017 WL 377943, at *2 (Bankr. N.D. Ga. Jan. 26, 2017).

In the underlying *Meta Materials* bankruptcy, there are no "actions" pending for the Trustee to rely on as a predicate for issuing the Request under Civil Rule 45's subpoena powers. Accordingly, the Subpoenas should be quashed.

Other than Civil Rule 45, only one other avenue exists for the Trustee to issue a subpoena: "when no 'actions' are yet pending in a bankruptcy case, Bankruptcy Rule 2004 provides the only discovery tool for parties in interest to gather information." *Id.*; *see also In re Rochester Drug Coop., Inc.*, BR 20-20230-PRW, 2020 WL 5525798, at *2 (Bankr. W.D.N.Y. Sept. 11, 2020) ("This Court agrees with the holding of the *Patel* court."). But the Trustee cannot avail itself of this path, because the BR2004 Subpoena violates Bankruptcy Rule 2004's scope and purpose.

Under Bankruptcy Rule 2004, Nasdaq should not be required to comply with the BR2004 Subpoena because the Request and oral examination topics are beyond the scope of permissible inquiries and being used for an improper purpose. Additionally, Nevada local rules do not allow document requests under Bankruptcy Rule 2004, and, accordingly the Nevada Bankruptcy Court rejected the Trustee's motion for approval under this rule of a subpoena on Nasdaq to seek documents, permitting only the BR2004 Subpoena seeking oral examination.

### i. The BR2004 Subpoena violates Bankruptcy Rule 2004's Scope.

Bankruptcy Rule 2004 provides that, on a party in interest's motion, the court may order the examination of any entity. Fed. R. Bankr. P. 2004(a). The scope of a Bankruptcy Rule 2004 examination is generally "unfettered and broad"; the rule essentially permits a "fishing expedition." *In re Mastro*, 585 B.R. 587, 596 (B.A.P. 9th Cir. 2018) (internal citations omitted). However, Bankruptcy Rule 2004 "is not without limits." *Id*. "It should not be used to abuse or harass. Nor should it stray into matters which are not relevant to the basic inquiry." *Id*. Even the specific topics allowed by Bankruptcy Rule 2004(b) "must be read in light of the general restriction of inquiry to the financial affairs of the debtor." *In re Johns-Manville Corp.*, 42 B.R. 362, 365 (S.D.N.Y. 1984).

Bankruptcy Rule 2004(b) specifically provides that the examination may relate "only" to: (i) the debtor's acts, conduct, or property; (ii) the debtor's liabilities and financial condition; (iii) any matter that may affect the administration of the debtor's estate; or (iv) the debtor's right to a discharge. Fed. R. Bankr. P. 2004(b). "Administration" concerns irrelevant matters such as distributing property. *See, e.g., In re Harper*, 557 B.R. 171, 176 (Bankr. D. Ariz. 2016). The debtor's "right to a discharge" is also inapplicable in a corporate chapter 7 case.

Here, the Trustee's *ex parte* motion under Bankruptcy Rule 2004 stated that the requested examination will relate to "the Debtors' assets, liabilities, and financial affairs" and is necessary to "ascertain the facts and circumstances surrounding potential manipulation of Debtor's share prices… how the manipulation affected Debtor's financial condition for possible recovery on behalf of Debtor's estate." That stated topic of the examination, and the Request, both seek information that is outside the scope of Bankruptcy Rule 2004(b) because it relates to other non-parties such as broker-dealers and third-party conduct (not the debtor) and seeks communications among non-debtors (not the debtor) about trading activity in the debtor's equity interests (not the debtor's assets, liabilities, or financial condition).

### ii. The BR2004 Subpoena violates Bankruptcy Rule 2004's Purpose.

It is "improper" to use Bankruptcy Rule 2004 to "circumvent the procedural safeguards provided a litigant by the [Civil] Rules." *In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr. D. Mass. 1983) ("the scope of a Rule 2004 examination is broad… However, it must *first* be determined that the examination is proper… abuse of propriety and the judicial process certainly was never contemplated."); *see also In re Defor Ctr., LLC*, 634 B.R. 630, 632 (Bankr. M.D. Fla. 2021); *In re Waddell*, 2025 WL 957733, at *7 (Bankr. S.D.N.Y. Mar. 28, 2025). Seeking information allegedly necessary to determine whether to bring a complaint when the requesting party is already "in a position to file an action against certain of the individuals and entities," is a quintessential example of improper use. *See, e.g.*, *GHR Energy Corp.*, 35 B.R. at 537.

In this case, the Trustee (i) already has ample information from pre-bankruptcy investigations, (ii) has formally employed four law firms expressly in preparation for litigation against certain targets, and (iii) has obtained $11.8 million in litigation funding commitments. Accordingly, the BR2004 Subpoena should be quashed.

### iii. The BR2004 Subpoena violates Nevada's Local Bankruptcy Rules.

In addition, Nevada's Local Rules of Bankruptcy Practice 2004 and 9016 ("Nevada Rule 2004" and "Nevada Rule 9016") instruct that "[p]roduction of documents may not be obtained via an order under [Bankruptcy Rule] 2004," but may be "obtained via subpoena as provided by [Civil Rule] 45(a)(1)(C), as adopted by [Bankruptcy Rule] 9016"; and "[w]hen a party seeks documents… from the debtor or others in a case under the Bankruptcy Code separately from a deposition or an examination, the attorney for the party may issue and serve a subpoena duces tecum using Official Form 2570." *See* Nevada Rule 2004(c); Nevada Rule 9016(b).

The BR2004 Subpoena improperly includes the Request for documents along with the command to appear for examination. Therefore, the portion of the BR2004 Subpoena purporting to command document production should be quashed pursuant to the applicable local rules. *See, e.g.*, *In re CWNevada LLC*, 602 B.R. 717, 721 (Bankr. D. Nev. 2019) ("It appears that the 2004 Subpoena commands both testimony and production of documents based on the CIMA 2004 Order. The latter command appears to run afoul of Local Rule 2004(c)."); *In re Aston-Nevada Ltd. P'ship*, 391 B.R. 84, 105 (Bankr. D. Nev. 2006), *vacated on other grounds*, 409 Fed. Appx. 107 (9th Cir. 2010) ("those who wish to compel the production of documents" must "issue or obtain a subpoena for such documents in accordance with Bankruptcy Rule 9016 (which incorporates [Civil] Rule 45)."). Thus, even were the BR2004 subpoena permissible, its request for documents should be quashed as disallowed by the bankruptcy rules and the Bankruptcy Court's prior order.

### b. The Subpoenas are Overbroad, Irrelevant, and Unduly Burdensome.

Alternatively, the Subpoenas must be quashed because they impose an undue burden on Nasdaq. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv) (courts "must" quash a subpoena that "subjects a person to undue burden"). The "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The party seeking discovery bears the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case, and the burden then shifts to the party opposing discovery to show that the information sought is privileged or unduly burdensome." *Lelchook v. Lebanese Canadian Bank, SAL*, 670 F. Supp. 3d 51, 54-55 (S.D.N.Y. 2023). "When evaluating undue burden, the court

considers the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed." *Id.*

Here, the Subpoenas impose an undue burden for several reasons. *First*, the Subpoenas are facially overbroad; they request "all relevant records" related to orders of "any type" for shares of Meta, MMTLP, MMAT, TRCH, or other CUSIPs or legend identifiers. Exs. A, B. *See Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 WL 4242040, at *3 (S.D.N.Y. Sept. 6, 2019) (quashing non-party subpoena seeking "All Documents" related to several topics as unduly burdensome); *Lelchook*, 670 F. Supp. 3d at 55 (quashing subpoena seeking "all" documents).

*Second*, the Trustee has not explained how the requested order data for Meta, MMTLP, MMAT, and TRCH stocks for four years is relevant to its potential claims for market manipulation, including practices such as naked short selling and spoofing. Courts routinely quash subpoena premised on speculation that a non-party has relevant information. *See, e.g.*, *Delgado v. Donald J. Trump for President, Inc.*, 2024 WL 3730499, at *3 (S.D.N.Y. May 13, 2024) (quashing non-party subpoena that sought "any and all documents and communications" over a "one-and-a-half-year period" to be "overly burdensome," where it was "speculative" whether non-party had any relevant information). To the extent that the Trustee seeks the identities of investors who are suspected to have engaged in market manipulation, the Trustee's requests for MPIDs would not accomplish that objective, as exchanges like Nasdaq do not have visibility into who is placing orders beyond the executing brokers. *See generally City of Providence, Rhode Island v. Bats Global Markets, Inc.*, 2022 WL 902402, at *12 (S.D.N.Y. Mar. 28, 2022) (explaining that MPIDs "do not identify the investor on whose behalf a trade was made").

*Third*, the Trustee has made no showing that it cannot obtain the information it seeks by other means that would not burden Nasdaq, such as by seeking discovery from the suspected wrongdoers. Fed. R. Civ. P. 26(b)(2)(C) (courts "must limit" discovery where information sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Bankruptcy Rule 2004 does not permit an end-run around the nonparty protections in Rule 45. *See In re Enron Corp.*, 281 B.R. at 841 ("[C]ourts have expressed concern that Rule 2004 examinations [should] not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."). Indeed, the Federal Rules militate *against* permitting discovery where, as here, a litigant has not yet filed any claims. Fed. R. Civ. P. 26(b)(l), Adv. Comm. Notes to 2000 Amendment (litigants "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings"). In the interest of compromise, Nasdaq produced records for the six-month period that the Special Counsel identified as most important. With six months of documents in hand, the Special Counsel still has not been able to articulate a compelling basis or need for the Request or additional documents. Broadening the production, especially at this pre-litigation stage, to include an additional forty-two months of records would impose a burden on Nasdaq that is magnitudes greater than the burdens it has already incurred.

### III. Conclusion

For the foregoing reasons, Nasdaq respectfully requests that the Court schedule a pre-motion conference and grant it the relief requested herein.

Respectfully submitted,
*/s/ Jacquelyn Schell*
Jacquelyn Schell