

October 20, 2025

**VIA ECF**

U.S. District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: *In re Meta Materials, Inc.*, Motion to Quash Non-Party Subpoena in Underlying Bankruptcy Case No. 3:24-50792-hlb (U.S. Bankruptcy Court for the District of Nevada), No. 1:25-mc-00453 (SDNY)

Your Honor:

  I represent Christina Lovato, the chapter 7 trustee (the "Trustee") appointed by the Office of the United States Trustee to administer the estate of Meta Materials, Inc. ("Meta Materials"). Meta Materials is the debtor in a bankruptcy case pending in Nevada, *In re Meta Materials Inc.*, No. 24-50792-hlb (Bankr. D. Nev) (the "Bankruptcy"). The Trustee served two subpoenas on The Nasdaq Stock Market LLC ("Nasdaq") in the Bankruptcy in March 2025 (the "Subpoenas"). I write in response to the letter-brief filed by Nasdaq on October 15, 2025, which requests a pre-motion conference in advance of a proposed motion to quash the Subpoenas.

  The Trustee is available for a pre-motion conference, bur rather than this Court addressing the substance of Nasdaq's proposed motion to quash, the Trustee respectfully asks that Your Honor transfer Nasdaq's motion to Judge Gary A. Spraker of the U.S. Bankruptcy Court for the District of Nevada, who is presiding over the case underlying the Subpoenas, *In re Meta Materials*. Fed. R. Civ. P. 45(f) allows Your Honor to transfer this matter "to the issuing court" under "exceptional circumstances," found here. This letter-brief explains the relevant legal standard and provides Your Honor background information about the *Meta Materials* Bankruptcy and similar pending motions to quash filed by other parties. The Trustee does not address all of Nasdaq's arguments here, in anticipation of the matter being transferred to the Bankruptcy, but will do so as directed.

  It would be far more efficient for Nasdaq's motion to be heard in the Bankruptcy and there is little or no burden on Nasdaq in transferring the motion. First, Judge Spraker is familiar with the facts of this case and the Bankruptcy Rules at issue. Nasdaq's letter-brief relies on Bankruptcy Rules 9002, 9016, and 2004, as well as Nevada's Local Rules of Bankruptcy Practice 2004 and 9016, which the Nevada court is better-suited to evaluate. Judge Spraker has been a Bankruptcy Judge for the District of Alaksa since 2012 and has served as a visiting judge in Nevada since 2013. Second, the Bankruptcy Court previously so-ordered the Trustee's investigation, a Bankruptcy Rule 2004 examination of Nasdaq, and a protective order negotiated by the Trustee and Nasdaq. Nasdaq has never challenged those orders in the Bankruptcy, but Nasdaq's filing in this Court is essentially a collateral attack on the Bankruptcy Court's orders. Third, three other subpoena recipients have filed a motion to quash in the Bankruptcy, raising similar legal and



factual arguments as Nasdaq does, and Judge Spraker is hearing oral argument on that motion next week.  Fourth, FINRA has also filed a motion to quash a subpoena served by the Trustee, but in the U.S. District Court for the District of Columbia, and three other subpoena recipients could also file motions to quash, each in a different state, so the same issues may arise in multiple districts.  Finally, there is little or no burden on Nasdaq because it is a sophisticated global company; its outside counsel, Ballard Spahr, have an office in Nevada; Nasdaq has not previously objected to any of the Bankruptcy Court's orders, based on burden or other grounds; and Judge Spraker holds at least some hearings remotely.

Alternatively, the Trustee may also file a motion to compel Nasdaq's compliance before the Bankruptcy Court, pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), which provides that "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."  *See, e.g., United States v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 544 (S.D.N.Y. 2016) (remedy for non-compliance with subpoena is "a motion to compel . . . made in the district where compliance was required").

### A.    Fed. R. Civ. P. 45(f) Legal Standard

Although the Subpoenas were issued in the Bankruptcy, which is being heard in Nevada, Nasdaq filed this action in New York pursuant to Fed. R. Civ. P. 45(d)(3)(A), which provides that "the court for the district where compliance is required must quash or modify a subpoena" under certain circumstances.  The Trustee does not dispute this Court's jurisdiction on that basis, since Nasdaq is headquartered in New York and "The 'place of compliance' for a non-party subpoena . . . is 'a place within 100 miles of where the person resides, is employed, or regularly transacts business in person.'"  *Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 1:22-cv-2753 (MKV), 2024 U.S. Dist. LEXIS 2230, at *3 (S.D.N.Y. Jan. 3, 2024).

However, Fed. R. Civ. P. 45(f) permits this Court to transfer Nasdaq's motion to Judge Spraker, the issuing court, "if the person subject to the subpoena consent or if the court finds exceptional circumstances."  Rule 45(f) is "primarily focused on avoiding piecemeal litigation." *Am. Plan Adm'rs v. S. Broward Hosp.*, 39 F.4th 59, 61 (2d Cir. 2022).  Nasdaq declared impasse with the Trustee the evening of October 15, 2025, filed its letter-brief that night, and alerted the Trustee's counsel to the filing on October 16.  I asked Nasdaq's counsel the next day, on October 17, whether they consented to transferring Nasdaq's motion to Nevada.  Nasdaq's counsel responded today to say Nasdaq does not consent to transfer.

The Committee Notes on Rules—2013 Amendment for FRCP 45 provide "concrete guidance as to when those 'exceptional circumstances' are present and transfer is warranted."  *Am. Plan Adm'rs v. S. Broward Hosp. Dist.*, No. 21-MC-2663 (KAM) (TAM), 2021 U.S. Dist. LEXIS 244296, at *7-8 (E.D.N.Y. Dec. 22, 2021).  The Committee Notes explain that "In the absence of consent, the court may transfer in exceptional circumstances . . . ."  The Trustee, as the proponent of transferring the motion, "bears the burden of showing that such circumstances are present."  The Notes state that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."  *Id.*; *see, e.g., Am. Plan Adm'rs*, 39 F.4th at 60 (citing Committee Notes).  The Notes also recognize that "Transfer is appropriate only if such interests outweigh the interests of the nonparty served with

2000 Powell Street, Suite 1400, Emeryville, California 94608  t. 415.421.7100  f. 415.421.7105  www.schneiderwallace.com



the subpoena in obtaining local resolution of the motion." The Notes also comment that this Court "may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions."

Courts in this district regularly transfer motions to quash to issuing courts presiding over the underlying cases, pursuant to Fed. R. Civ. P. 45(f). In one example, the court transferred a miscellaneous action where the issuing court was "best-positioned to address the subpoena dispute given . . . the complexity of the underlying action," the court's handling of other discovery disputes, the lack of evidence of burden, and other grounds. *Anand v. Ledoux*, No. 25-MC-298 (DEH), 2025 U.S. Dist. LEXIS 159072, at *5 (S.D.N.Y. Aug. 15, 2025). In another case, the court transferred a motion because the issuing court was "best positioned to adjudicate the enforcement of this subpoena" and because "judicial economy and consistency considerations outweigh any potential burden." *Hilb Grp. of N.Y., LLC v. Associated Agencies, Inc.*, No. 23-mc-264 (LJL), 2023 U.S. Dist. LEXIS 140118, at *3 (S.D.N.Y. Aug. 10, 2023). A third court transferred a motion to quash where the issuing court had entered a protective order, other motions to quash had been filed elsewhere, and the burden on the movant was low due to remote hearings. *Am. Plan Adm'rs*, 2021 U.S. Dist. LEXIS 244296.

### B. The Bankruptcy

Meta Materials, Inc. is an advanced materials and nanotechnology company. The company filed for chapter 7 bankruptcy liquidation in the United States Bankruptcy Court, District of Nevada on August 9, 2024. *In re Meta Materials Inc.*, Dkt. No. 1. Ms. Lovato was duly appointed by the United States Trustee as the chapter 7 trustee. Dkt. No. 14. The Trustee in this Bankruptcy, like all trustees, has broad statutory duties and powers to act on behalf of the debtor, including "investigat[ing] the financial affairs of the debtor." 11 U.S.C. § 704(a). The Trustee is investigating Meta Materials's financial affairs, in part, by investigating possible manipulation of Meta Materials stock by third parties in the years prior to the bankruptcy filing. Stock manipulation may have affected Meta Materials's financial affairs in various ways, including driving down the stock price and perhaps contributing to the circumstances leading to the chapter 7 filing.

The Bankruptcy Court has so-ordered the Trustee's investigation of potential Meta Material stock manipulation, including its efforts to obtain discovery from Nasdaq. The Trustee retained Special Litigation Counsel from several law firms, including my firm, to "investigate potential claims and, if meritorious, pursue litigation related to suspected [Meta Materials] stock manipulation through illegal trading practices . . . ." Dkt. Nos. 98, 98-1. The Bankruptcy Court granted the Trustee's applications. *Id*. Nos. 118, 1962. The Court also so-ordered Bankruptcy Rule 2004 examinations of Nasdaq (*id*. No. 1644) and many other parties, and granted the Trustee's application to employ a local Nevada firm to conduct those investigations (*id.* No. 119). The Trustee served subpoenas on Nasdaq (*id.* No. 1623, Notice of Issuance of Subpoena) and the other parties, seeking financial data about trades of Meta Materials stock and other information. The Bankruptcy Court also so-ordered a May 21, 2025 protective order between Nasdaq and the Trustee (*id*. No. 1955), negotiated by the Trustee and Nasdaq's in-house counsel, pursuant to which Nasdaq made one production of Meta Materials trading data on July 3, 2025. **Nasdaq has not opposed any of the Trustee's filings in the Bankruptcy**, including the Rule 2004 motion and the Notice of Issuance of Subpoena.

2000 Powell Street, Suite 1400, Emeryville, California 94608   t. 415.421.7100   f. 415.421.7105   www.schneiderwallace.com



### C. Motions to Quash the Trustee's Subpoenas

Nasdaq is the fifth subpoena recipient to file a motion to quash the Trustee's subpoenas. Citadel Securities LLC, Anson Funds Management LP, and Virtu Financial, LLC filed a joint motion to quash in the Nevada bankruptcy on August 5, 2025. *In re Meta Materials*, Dkt. No. 2088; Exhibit A (the "Citadel Motion"). The Trustee filed her opposition on September 23, 2025. Dkt. No. 2206; Exhibit B. Citadel, Virtu, and Ansen will be filing any reply by October 23, 2025. *See* Dkt. No. 2127 (scheduling order). The Citadel Motion will be argued on October 30, 2025 at 10:30 am before Judge Spraker. *See* Dkt. No. 2135 (order on hearing date).

FINRA also filed a motion to quash the Trustee's subpoenas, filing in the U.S. District Court for the District of Columbia on August 6, 2025. *In the matter of: Motion to Quash Subpoenas to Nonparty Financial Industry Regulatory Authority, Inc*., 1:25-mc-00129-LLA-GMH (D.D.C.), Dkt. No. 1 ("FINRA Motion"); Exhibit C. The Trustee filed her opposition on September 29, 2025. *Id.* Dkt. No. 14; Exhibit D. FINRA's reply is due by October 27, 2025, and no argument date has been set. *See id.* Dkt. No. 9 (scheduling order). The FINRA Motion has been assigned to Magistrate Judge G. Michael Harvey. The Trustee spent considerable time in the opposition brief educating the court about the Bankruptcy's procedural history and the subpoenas, as the Trustee would do here in opposing Nasdaq's motion to quash. *Id.* Dkt. No. 14 at 7-16. The Trustee asked Judge Harvey to transfer the FINRA Motion to the Bankruptcy, pursuant to Fed. R. Civ. P. 45(f), like with Nasdaq's motion. *Id.* Dkt. No. 14 at 17, 43.

Most recently, Nasdaq filed its letter-brief last week in this Court, seeking a pre-motion conference in advance of a proposed motion to quash the Subpoenas. Dkt. No. 1 at 1. The legal and factual arguments raised in Nasdaq's letter-brief substantially overlap with the arguments raised in the Citadel and FINRA motions. (Indeed, Nasdaq even references those motions in its letter-brief, *id*. at 2.) Nasdaq argues that the Subpoenas are beyond the scope of Bankruptcy Rule 2004 and Nevada's local bankruptcy rules. *Id*. at 3-4. FINRA made the same argument (FINRA Motion at 10-11), as did Citadel (Citadel Motion at 9-16). Nasdaq also argues that the Subpoenas are overbroad, irrelevant, and unduly burdensome. Dkt. No. 1 at 4-5. FINRA makes the same arguments (FINRA Motion at 8-21), as did Citadel (Citadel Motion at 16-20). The Trustee's responses to Nasdaq's anticipated motion to quash would also be similar to the Trustee's arguments in opposition to the Citadel and FINRA motions.

### D. Nasdaq's Motion Should be Transferred to the Bankruptcy

Based on the foregoing legal standards and facts, this Court should transfer Nasdaq's motion to the issuing Court, the U.S. Bankruptcy Court for the District of Nevada. In the absence of Nasdaq's consent, the transfer is warranted by "exceptional circumstances" under Fed. R. Civ. P. 45(f), as interpreted by the Committee Notes on Rules—2013 Amendment.

As stated in the Committee Notes, "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Meta Materials filed for bankruptcy in August 2024 and the docket has amassed over 2,200 entries since then. Judge Spraker is managing the Bankruptcy and, though the case was

2000 Powell Street, Suite 1400, Emeryville, California 94608  t. 415.421.7100  f. 415.421.7105  www.schneiderwallace.com



recently reassigned to him, he has been a bankruptcy judge for 13 years and is more familiar than this Court with the relevant facts, procedural history, and bankruptcy rules,  Knowledge of the rules, including the local Nevada rules, is essential since Nasdaq's letter-brief turns on nuanced interpretations of those rules.  Judge Spraker will be hearing argument on Citadel's motion to quash on Thursday, October 30, 2025.  That motion involves the "same issues" as Nasdaq's motion, as explained above, so the issuing court will be ruling on the same issues imminently.

Also, per the Committee Notes, "the same issues [as Nasdaq's anticipated motion to quash] are likely to arise in discovery in many districts."  FINRA raised the same arguments as Nasdaq in its motion to quash filed in the District of Columbia, and other third parties who received similar subpoenas from the Trustee could also move to quash in other districts.  Charles Schwab & Co. is headquartered in Texas, DTCC is headquartered in New Jersey, and TradeStation Securities is headquartered in Florida.  All three of those parties are currently negotiating productions with the Trustee but any of them could stop cooperating and move to quash at any time, as Nasdaq did.

The Committee Notes state that "The prime concern [in transferring a subpoena to the issuing court] should be avoiding burdens on local nonparties subject to subpoenas . . . ."  Any burden on Nasdaq is insignificant.  Nasdaq is a large, sophisticated company with many offices.  Nasdaq's outside counsel in this action, Ballard Spahr, has more than 750 attorneys in 18 offices nationwide, including a dozen attorneys in Las Vegas, Nevada.  The firm has Nevada-barred attorneys who could help represent Nasdaq in motion practice in the Bankruptcy.  The Trustee likewise has local bankruptcy counsel in Nevada who are more familiar with the bankruptcy rules and Nevada rules than my firm.  Moreover, in the modern era of remote hearings, any burden on Nasdaq is even less.  For example, the October 30, 2025 hearing before Judge Spraker on Citadel's motion to quash will be held remotely by Zoom.  *See* Dkt. No. 2135 (order on hearing date).  Judge Spraker held another hearing in the case by Zoom last week.  *See id.* No. 2194 (order on Zoom hearing).  Also, Nasdaq already complied with the Nevada-issued Subpoenas by making an initial production in July 2025; only now does Nasdaq seek to quash the Subpoenas.

Similarly, the Committee Notes state that "Transfer [to the issuing court] is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion."  Here, considerable interests favor transferring Nasdaq's motion to the issuing court, as explained above.  Conversely, Nasdaq has little or no interest in obtaining local resolution of its motion before this Court, which has no prior knowledge of the Bankruptcy and is less familiar with the bankruptcy rules at issue, other than a possible improper interest in making a collateral attack on the Bankruptcy Court's orders.

Thank you for your consideration.

Regards,

*/s/ David D. Burnett*
David D. Burnett